IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 3:12cr83-MHT |
| | ) | |
| KEVIN DARCY GOLDEN | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on defendant Kevin Darcy Golden's motion to suppress (Doc. # 26), filed May 22, 2012. The court heard evidence on the motion on June 6, 2012. For the reasons set out below, the motion is due to be denied.

**Facts**

Defendant Golden is charged in this court with sixteen counts of using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct – that is, producing child pornography – in violation of 18 U.S.C. § 2251(a). The superceding indictment alleges that Golden "surreptitiously filmed minor females changing clothes and using the bathroom at his residence," and also "filmed himself engaging in sexually explicit conduct with other minor females while the minors were apparently asleep." Superceding Indictment at 1, 2.

This case began with a February 18, 2012, report from the father of a minor female to the Auburn Police Department that his daughter had been abused by Golden during the preceding night when she was at a sleepover at Golden's house with his daughter. The report led to a police department investigation, and the issuance of a state search warrant for

Golden's residence. According to the United States, officers found sexually explicit photographs and videos of minor females on electronic devices at Golden's house, including a photograph of the complainant. Response to motion to suppress at 3 (Doc. # 30). These visual depictions gave rise to the instant case.

## Discussion

Defendant Golden's suppression motion presents the court with two issues[1] relating to the validity of the search warrant in this case, which the parties agreed at the hearing should be resolved based on the information contained within the four corners of the warrant application and affidavit. Defendant contends that: (1) the search warrant was not supported by probable cause, because the warrant affidavit, which relied on the report of a minor, was uncorroborated and did not provide sufficient information to demonstrate that the informant was reliable or credible; and (2) there was an insufficient nexus between the alleged crime (sexual abuse of a child) and the electronic devices ultimately seized.

The warrant application in this case sought permission to search for "any electronic device capable of storing, capturing, recording, or viewing digital images, to include but not limited to, digital cameras, cellular phones, video cameras, computer devices, external hard drives, flash drives, DVD's, CD's, and/or photographs" in defendant's residence that "constituted, or [are] expected to constitute, evidence of a criminal offense under the laws

---

[1] At the hearing on June 6, 2012, defendant waived the first issue presented in his motion which related to the court's jurisdiction (whether the warrant alleged only a violation of state law and not a federal crime).

2

of the State of Alabama ..., to wit: Sexual Abuse of a Child (under the age of 12)." Motion to Suppress (Doc. # 26-2 at 3). The warrant affidavit (redacted) alleged as follows:

> On February 18, 2012 D[] B[] reported to the Auburn Police Division that his eleven (11) year old daughter had been sexually abused. B[]'s daughter was spending the night of February 17th, 2012 with a friend at [], Auburn, Lee County, Alabama, which is located in Camden Ridge. The adult father of the friend was identified as Kevin Darcy Golden, alias, and was at the residence during the night. B[] daughter reported that during the night, Golden came into the bedroom where she and two other girls were sleeping. B[] daughter reported that Golden stuck his hand down the front of her shirt, and "cupped" her right breast, under her bra. B[] daughter stated that she was pretending to be asleep. B[] daughter stated that when she moved, Golden removed his hand from her breast and ran and hid in a closet inside the bedroom. A short time later Golden exited the closet and left the bedroom. B[] daughter reported that a short time later, Golden reentered the bedroom, where she was still pretending to be asleep. B[] daughter reported that Golden pulled her right tank top and bra strap off her shoulder. B[] daughter stated that she heard something clicking and saw flashes of light. B[] daughter believed that Golden was taking pictures of her. She pulled the blanket over her in an effort to cover herself and Golden left the room. B[] daughter reported that she woke her friend and told her that she was sick and wanted to go home. Golden came back into the bedroom and asked if everything was ok. Golden asked B[] daughter "was there anything in particular that woke her up?" B[] daughter stated that she attempted to call her parents using her cell phone, but Golden took the phone from her and told her that he would call her parents. She reported that Golden called her parents and told them that she was sick and needed to be picked up. B[] father arrived at the residence to pick her up. Golden did not give B[] daughter her cell phone back, but gave it to her father when he picked her up. B[] father reported that Golden seemed nervous and out of character. When they arrived home B[] daughter told her parents about the incidents at the Golden's house.

Motion to Suppress (Doc. # 26-2 at 4)(redactions in brackets; one redaction added).

1. <u>Probable Cause</u>

   Defendant's contention that the search warrant affidavit does not sufficiently establish

3

the credibility and reliability of the minor informant must be analyzed in accordance with Illinois v. Gates, 462 U.S. 213 (1983). In Gates, the Court set out a totality of the circumstances test for assessing whether or not probable cause supports a warrant for which an informant gives information. It indicated that "this totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip." Id. at 230-231 (citations and footnote omitted). The Court noted that

> an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case ... . Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

Id. at 230 (footnote omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. A judge need have no more than a "substantial basis" for concluding that probable cause exists, and courts must give great deference to the judge's assessment of the facts presented to him or her. United States v. Moody, 977 F.2d 1425, 1431 (11th Cir. 1992); see also United States v. Martin, 297 F.3d 1308, 1313 (11th Cir.

2002)("[T]he affidavit must contain 'sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched.'").

In the instant case, the minor who provided the information that formed the basis of the warrant affidavit was not an anonymous tipster, but instead was the victim of the alleged offense. See United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006) ("The courts have traditionally viewed information drawn from an ordinary witness or crime victim with considerably less skepticism than information derived from anonymous sources."). She gave an explicit and detailed description of the alleged wrongdoing based on what was apparently firsthand observation. Her report to her father immediately followed the incident, and her father made his complaint to police shortly thereafter, before the memories of any of the participants were likely to have altered or faded.

As to the credibility of the informant, no motive for her to lie is suggested by the affidavit. On the night in question, she was simply spending the night at the home of a friend – not, for example, acting as an accomplice in a hotly contested divorce or some other dispute of that kind. Her account of the incident followed a logical sequence and included a description of actions (e.g., the removal of her "right tank top and bra strap" from her shoulder, her attempts to feign sleep, Golden's return to the room three separate times, his running away to hide in the closet, and his refusal to give her cell phone back), and dialog – (e.g., Golden's question,"'was there anything in particular that woke her up?'") that is too precise and specific to be likely to be fabricated. Further, it is clear that the informant's

father, who was in the best position to be familiar with the credibility of the child, fully believed her. In addition, nothing in the affidavit suggests a reason to doubt the father's own credibility.

With regard to the informant's age and reliability, the defendant is correct that the Supreme Court has, in another context (application of the death penalty to juveniles) noted that, for example, "[a]s compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed"; further, "juveniles' lack of maturity and underdeveloped sense of responsibility ... often result in impetuous and ill-considered actions and decisions[.]" Graham v. Florida, 130 S.Ct. 2011, 2026 (2010)(internal quotation marks omitted). As defendant urges, the court is inclined to scrutinize information from child victims more closely than that of adults. Nevertheless, in the instant case, the undersigned is satisfied that the warrant affidavit presented the issuing judge a substantial basis to rely on the victim's account in finding probable cause. The child was 11 years old at the time the warrant was sought, which likely put her in middle school rather than in the elementary grades or kindergarten. Her actions during the incident – such as pretending to be asleep, pulling up the blanket to cover herself, waking her friend to announce that she was sick, and attempting to call her parents on her cell phone – appeared to be thoughtful and logical. Her ability to recall detail was excellent. Her decision to secure assistance in leaving and to report the incident immediately

represented a clear-headed and responsible reaction to the events she described. Thus, in this case, the issuing judge was entitled to draw an inference from the words of the warrant affidavit alone that the complaint was based on information from a reliable and credible informant; the affidavit was essentially self-corroborating.

Accordingly, considering the totality of the circumstances set forth in the affidavit, the judge had sufficient information to find that there was probable cause to believe that a crime had been committed.

2.  Nexus Between the Alleged Crime and the Items Seized

The Fourth Amendment requires "a nexus between the item to be seized ... and criminal behavior." Warden v. Hayden, 387 U.S. 294, 307 (1967); see also United States v. Griffin, 555 F.2d 1323, 1325 (5th Cir. 1977). As noted above, the warrant application sought permission for police to search for "any electronic device capable of storing, capturing, recording, or viewing digital images, to include but not limited to, digital cameras, cellular phones, video cameras, computer devices, external hard drives, flash drives, DVD's, CD's, and/or photographs" in defendant's residence that constituted evidence of the crime of sexual abuse of a child under the age of 12 (Ala. Code 1975 §13A-6-69.1)." Motion to Suppress (Doc. # 26-2 at 3).

Here, the issuing judge had a substantial basis to believe that the alleged abuse and/or the surrounding circumstances may have been recorded by the defendant in one or more photographs ("B[] daughter stated that she heard something clicking and saw flashes of light.

7

B[] daughter believed that Golden was taking pictures of her."). Motion to Suppress (Doc. # 26-2 at 4). Digital photographs clearly can be taken, stored or maintained on cameras, cellular phones, video cameras, computer devices, external hard drives, flash drives, DVD's, CD's, or hard copy. In this case, the electronic devices seized may not have been the instrumentalities by which the alleged crime was committed, but they certainly could reasonably be believed to contain evidentiary materials by which the alleged crime might be proven. It is well settled that "valid warrants may be issued to search *any* property ... at which there is probable cause to believe that fruits, instrumentalities, or <u>evidence</u> of a crime will be found." <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 554 (1978)(underlined emphasis added). Thus, there was a sufficient nexus between the items to be seized and the alleged criminal behavior to pass constitutional muster.[2]

### Conclusion

Accordingly, for the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion to suppress (Doc. # 26) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before July 5, 2012.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

---

[2] Because the court has determined that the search in this case was conducted pursuant to a valid warrant, it does not reach the good faith exception under <u>United States v. Leon</u>, 468 U.S. 897, 919 (1984).

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 21st day of June, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE