IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
UNITED STATES OF AMERICA     )
                             )
    v.                       )    CRIMINAL ACTION NO.
                             )       3:12cr83-MHT
KEVIN DARCY GOLDEN           )          (WO)
```

OPINION AND ORDER

This cause is before the court on defendant Kevin Darcy Golden's motion to suppress; the magistrate judge's recommendation to deny Golden's suppression motion; and Golden's objections to the magistrate judge's recommendation. After an independent and de novo review of the record, including a transcript of the hearing before the magistrate judge on the motion to suppress, it is ORDERED that:

(1) Defendant Kevin Darcy Golden's objections to the magistrate judge's recommendation (Doc. No. 48) are overruled;

(2) The magistrate judge's recommendation (Doc. No. 42) is adopted; and

(3) Defendant Golden's motion to suppress (Doc. No. 26) is denied.

***

In so ordering, the court adds the following thoughts about the issues presented in the motion to suppress and the magistrate judge's recommendation.

First, on the issue of whether the statements contained in the warrant-affidavit were sufficiently reliable and trustworthy to provide probable cause, the court acknowledges that there is a distinction between eyewitness or victim statements, on one hand, and hearsay about those statements, on the other.  Thus, while courts are often skeptical of information that comes from informants or anonymous sources, especially when it is uncorroborated, the Eleventh Circuit Court of Appeals has held that, when the search warrant relies upon information from alleged crime victims, their information is viewed with considerably less skepticism.  <u>United States v. Martinelli</u>, 454 F.3d 1300, 1307 (11th Cir.

2006). And, while the youth of a witness or alleged victim is relevant to the reliability of her statement, the Eleventh Circuit has also explained that these statements can provide police officers with probable cause. See, e.g., Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998) (noting that, "although a child victim's statements must be evaluated in light of her age," these statements may be "sufficiently reliable and trustworthy at their core to form the basis for probable cause to arrest."); Lowe v. Aldridge, 958 F.2d 1565, 1571 (11th Cir. 1992) ("There is no basis for holding that police officers cannot depend on the uncorroborated evidence of a child victim of sexual abuse for the request of a warrant."); Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) ("Even though these statements were made by an injured and likely traumatized four-year-old, [police officers] acted properly in placing a reasonable amount of trust in the truth of [the victim's] statements."). Witness and alleged-victim statements, as opposed to

hearsay or anonymous tips, receive more credence for a simple reason: they are based upon personal, rather than second-hand, knowledge.

In this case, the warrant-affidavit does not actually contain non-hearsay statements from the alleged victim; it instead relies upon the reporting of those statements through her father. The discussion in the magistrate judge's recommendation of the minor's actions and behavior should not be read as treating the hearsay as actual statements of the alleged victim to the police. The fact that the affidavit relies upon hearsay, however, does not mean that the statements cannot provide probable cause, just that they cannot be evaluated as witness statements. Here, it was plainly reasonable for the detectives to rely upon the father's statements about what his daughter, especially given her age of 11 (she was not a toddler or kindergarten-aged child, as the children in Lowe or Marx were), her sophistication (she was entrusted with her own cell phone), the speed at

4

which the sequence of events transpired, and the fact that the families were generally regarded as friends. Indeed, any reason to doubt the truth of the daughter's statements (given that she is a minor) is further undermined, rather than affirmed, by the fact that (1) the father believed them and (2) reported them almost immediately to the police. Perhaps more importantly, parts of the affidavit are based upon the father's personal knowledge and are not hearsay. He knew, for example, that the alleged victim was staying the night at Golden's house; that she, in the middle of the night, wanted to leave; and that Golden, not his daughter, had called him to come retrieve his child.

Second (and related to the distinction between hearsay and witness or victim statements), in a case, where officers rely heavily upon hearsay instead of actual witness or alleged-victim statements, corroboration becomes all the more important, essential even. As suggested in the Eleventh Circuit cases

mentioned above, if the police had actually interviewed the alleged victim and relied upon her statement, there would likely be less need for corroboration. See also United States v. Shaw, 464 F.3d 615, 623 (6th Cir. 2006). Thus, in cases like Rankin, 133 F.3d at 1441, and Marx, 905 F.2d at 1507, where officers were able to rely upon other corroboration in support of the alleged-victim's statements, such corroboration may not have been absolutely necessary. In a hearsay case, however, a lack of corroboration can be fatal. See, e.g., Shaw, 464 F.3d at 626 (holding that a "mother's bare-bones hearsay accusation ..., with no corroborating evidence, did not suffice to establish probable cause").

Here, Golden contends there was no corroboration of the minor's statements in the affidavit. The court disagrees with Golden, and agrees with the magistrate judge, that "the affidavit was essentially self-corroborating." Recommendation (Doc. No. 42) at 7. Given the importance of corroboration in this case, it is

necessary to explain why.  As mentioned, the affidavit does not include <u>only</u> hearsay; there are also facts relayed to detectives from the father, of which he had personal, rather than second-hand, knowledge. Specifically, (1) it is undisputed that the father picked up his daughter in the middle of the night; (2) the daughter's statement that Golden took her phone is corroborated by the fact that the father reported that Golden gave him the phone when he arrived; and (3) the basis for suspecting Golden had done something wrong was corroborated by the fact that the father independently observed and reported that "Golden seemed nervous and out of character."  In addition, there are no inconsistencies reported between the alleged victim's reported (hearsay) statements and what the father said happened.

Last, though unnecessary to the court's conclusion that probable cause existed to issue the warrant here, the court notes that this case could have been much easier for law enforcement, and this court, had the

7

detectives included (1) actual testimony from the victim, and (2) Golden's statements to the detectives. Cf. Shaw, 464 F.3d at 624 n.6 (criticizing law enforcement for not introducing, or seeking out, information directly from the alleged victim). Importantly, both of these statements, which are the sort of more reliable victim and witness statements upon which courts and officers should rely, were available when the warrant was requested. The alleged victim made statements to the Child Advocacy Center in Opelika, Alabama that matched what the father reported to the police; that is, the father's hearsay was corroborated by later consistent alleged-victim statements. See Suppression Hearing Tr. (Doc. No. 37) at 25. Likewise, just before the warrant application was filed, the detectives interviewed Golden who, after waiving his Miranda rights, admitted that he was in the room while the alleged victim was sleeping and that he even moved her blanket as she slept. See id. at

28. Again, these statements provide further corroboration.

To help their own cause, the officers should have included these crucial pieces of evidence with the warrant application; these statements provide important corroboration that may be essential in cases like this. Though not consequential here, in the same way that misleading omissions can undermine a warrant application, incomplete evidence can severely hamper the ability of the person to whom the warrant application is made to issue a warrant consistent with the Fourth Amendment.

DONE, this the 17th day of October, 2012.

                         /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE